We should have little signs saying appellate, appellate. We don't. I'm happy to answer your questions, Your Honor. I've seen people sit on both sides. Anyway, you may proceed. Judge, may it please the Court, my name is William Hine for the Reynolds in this case, and I do apologize. The only thing I have with me is a winter coat and scarf from Boston. We understand. Don't wish. That's a memo. It's okay. I appreciate it. Let me say, I think it's a rather handsome checkered shirt. I have a coat like that that I brought from Alaska. It's not working here today. You can sit down now. Things are looking good. I think this is as far ahead as you're going to get. It won't get better. No, no, I want to hear about Reynolds. I want to hear about Reynolds. Yes, indeed. Thank you. Your Honors, I would first like to say, if we look at the Federal Defendant's brief, that we do take issue with footnote number 8 on page 21 of their brief, where they're saying that we do not make any claim that the agency here, USCIS and DIA, abdicated the statutory responsibility. Counsel, forgive me. Footnote what? I'm sorry? Which footnote? I just didn't catch all of them. Oh, I'm sorry. Footnote number 8 on page 21 of the government's brief. Okay. Thanks. Can I get you to tell me what your claims are? Let me tell you the ones I perceive in this case. One is you're claiming this statute doesn't apply to you at all, your client, correct? Correct. And that's a purely statutory claim, that we should read the Adam Walsh Act as not applying to anybody who is seeking to sponsor the application of anyone but a child? Is that the claim? That's what I'm trying to find out. What is the nature of your statutory claim? The nature of the statutory claim, Judge, is you've got the two statements in the statute, poses no risk, and sole and unreviewable discretion of the Secretary. But that's not what I'm asking. I'm asking, you're saying the statute shouldn't have been applied to your client. Your client never should have been subjected to this statute, this statutory review by the Secretary of the adjustment of status application. So tell me what class that your client belongs to that is exempted from the statute. In other words, if the statute said any man who applies for this and your client were a woman, you'd say the statute doesn't apply and the Secretary shouldn't have subjected us to the strictures of the statute. So tell me why it is that you claim that your client is not covered by the statute at all. Judge, I think the very clear background of the statute and the wording of the statute itself is that it was meant to protect minus. That was the whole purpose of the enactment of the statute. Okay, but remember, the no risk determination is not reviewable. So tell me, is it a group of people who are sponsoring the application of non-minors? Tell me who is exempt from the statute. Well, Judge, I think the big problem here is this question of poses no risk. But on that one, the Congress has told us that the Secretary's determination, that one, even if it's just ridiculous to think that you posed a risk, the Congress has told us we can't look at that. You have an argument and it fits in with the case law that, well, the problem is I should have never been subjected to this no risk determination in the first place because the statute was intended to protect children. In other words, a legal argument. That's a legal argument. Setting aside the discretionary issues, what Judge Hurwitz is getting at, right? So tell me the group of people that you think should never have to go through the Adam Walsh Act review in order to be able to sponsor an adjustment of status application. What group of people is that that your client belongs to? Judge, I think it's people where the agency or where when you look at all the evidence together, there's no inkling. Yeah, but here's the problem. We can't look at the evidence. Congress has told us you've got to make a legal argument. You've got to say I'm a person who's not subject to the Adam Walsh Act because, and the because can't be because there's no evidence that I pose a risk because Congress has told us that's up to the secretary. So tell us why because you're not subject to the act. Well, Judge, if you look at the recent BIA decision, there were three of them last year that talked about this. And in particular, the 2014 opinion, a matter of, I'm not going to get this right, there was a two-to-one decision of the BIA on this issue and both the two board members in the majority and the dissenter all agreed that there is a big problem of the interpretation of what no risk means. The agency has chosen to use the beyond a reasonable doubt standard, but it's not in the statute. It's not in any Code of Federal Regulations. We're still missing each other here. I understand your argument about beyond a reasonable doubt, but you seem to have, maybe you don't. I thought you had a separate argument that as a matter of statutory interpretation, my client shouldn't have had to jump through this hoop. With that respect to the facts, particular facts of the case or the way the secretary processed it, I'm one of those people that this statute was not meant to cover. Tell me who those people are. That it's not meant to cover. Yes. It's not meant to cover people. 60-year-old men who are sponsoring the application of 50-year-old women. Okay, that's the problem I have as well. And I do think the no risk argument, the beyond a reasonable doubt argument is a different argument as I read it in your brief. And it seems to me another part of your argument is this notion that your client is making this application for his wife who is beyond, I take it, childbearing years and doesn't have any minor children and has one adult child who doesn't live in the home. And I think that's what Judge Hurwitz is getting at. This seems to be a different argument that you're making. Yeah. And the problem I have with it is that the statute says the question is whether this person poses a risk to the alien with respect to whom the application is filed. And that's his wife in this case. Correct. That's his wife. So we have plain language in the statute that says we're supposed to look at that alien as opposed to, and it seems to me that just flies in the face of your argument that what the Adam Walsh Act was really about is protecting kids. So what is your response to that, please? Well, Judge, in this case, this couple, the Reynolds, they were together before they were married in 2006. Right. They were married in 2006. They've been together since. The government, in all of the record here, the government has never pointed to any risk that is posed to the wife here by the husband. They've been together all these years. I mean, if there was any problem, I think we would agree on that. Well, you see my difficulty, and it's the same one Judge Christin's identifying. What you're really saying at the end of the day is this is a really dumb decision by the secretary. It doesn't make any sense because they've been together a long time and there's been no incidents and you've got lots of evidence. But I don't think that's a statutory exemption argument. That's an argument that the secretary messed up, and Congress told us not to look at arguments that the secretary messed up. But our case law does say that if you can claim you're not subject to the statute. I never was convicted of such a crime. Right. And that is fundamentally different than arguing that you think the secretary has incorrectly exercised the discretion that is afforded under this statute. So I'm trying to get at whether you think there's some predicate issue, predicate legal issue, that exempts your client from this statute. I think a lot of people have wrestled with this issue. Sure. It's a very difficult issue. You don't dispute that he committed a qualifying crime. That's a given in this case, Judge, yes. That he's sponsoring the application of an alien for adjustment of status. Correct. And those seem to be the statutory requirements. And then the statute says, okay, once you meet that, you go through this door and you meet the secretary who decides your case based on the facts. And when you come out the other door and she said no, or he said no, was she in this case, I guess, we can't question her reasons for doing so. Well, you know, Your Honor, the BIA in the case I just cited to you, they said we're not an Article III court. We are very limited by the Code of Federal Regulations to our jurisdiction. This is the BIA. And we cannot decide certain matters such as constitutional questions, et cetera. And so that's why we're here. And I would just point out, when you take that language, poses no risk, I mean, to me, driving is inherently dangerous. I think any time any of us goes on the roads, we may be a danger to ourselves, dangers to each other. Where do you – how far does no risk go? I mean, it seems to me the DHS and USCIS have defined it so broadly that nobody could ever succeed. That's a question that Congress has said we can't decide. However broad it is or however narrow it is, it's a question for somebody else. It's not a question for us. Congress has been very clear that is something that we cannot decide. So if that's the question you're posing to us, you're going to lose. Well, Judge, it's a question – well, I think there are constitutional questions, there are questions of law, there are questions of discretion. Okay, so I've asked you questions of law that are not constitutional ones. What are they? I think how is the statute interpreted when you say poses no risk? As opposed to how the Secretary is applying it. Now you're talking about what does the statute mean? Yes. Okay. What does no risk impose, no risk mean? Well, those are pretty categorical terms. It means that there isn't any risk. But everyone is a risk to everybody else in some way. Congress used the phrase no risk. So what's wrong with the agency adopting this beyond a reasonable doubt standard? What standard should they have used? Well, Judge, I think, again, going to the BIA decision in our brief, the normal standard is preponderance of the evidence. Normally we're not determining no risk. We're determining whether a fact is more likely than not. Here Congress has said to the Secretary, look, we don't want any of these people sponsoring these applications, except if you and your sole discretion can determine that the applicant will sponsor, will pose no risk at all to the alien. So under those circumstances, wouldn't it seem that the Secretary should be adopting a beyond a reasonable doubt standard? I really want to see a lot of proof, because this is a pretty demanding statute. Correct, Your Honor. But I would point out to you, the Secretary has to exercise discretion. And one of the arguments we make in this case is the Secretary did not exercise discretion, which I think falls under the jurisdiction of this Court, because even in the case of Dunlop v. Bachowski, which is the Supreme Court case we cite, there it was Secretary of Labor and there was a union election, and it was a similar sole and unreviewable discretion of the Secretary of Labor. But the Supreme Court still said there has to be a statement of reasons, there has to be something that showed the agency did exercise its discretion, did think about this, something to show us that there was an exercise of discretion. Well, in this case we have, though, forgive me for interrupting, but what we have is there was this, you know, he didn't, there was a notice of intent to deny and get your records in here and he couldn't provide proof that he completed his counseling. And so it didn't strike me that they had just thrown a dart at the board. I mean, he does have the burden to come forward and didn't. Judge, you know, I understand what you're saying and I respectfully disagree and I'd like to tell you why. Sure. The agency in this case held the I-130 petition for two years, starting in 2006 to 2008 before they sent this notice of intent to deny, and they gave Mr. Reynolds 87 days to respond. Mr. Reynolds is a veteran, he was in Veterans Administration Hospital in Boston, he was undergoing surgery, chemotherapy, and I have to say if there's ever a reason to grant more time by any court or administrative agency in the United States, it's when someone is undergoing this sort of thing. There was no showing that the agency simply, we supplied probably more than a three-inch record. There's a huge medical record. I've read the briefs and I appreciate the argument, but I'm mindful of your time. Is this a due process argument? Are you telling us they abused their discretion by not giving them an extension? What is that part of your brief? That's certainly one part of it, that if there was any case for more time, this was it, Your Honor. And the legal argument is? The legal argument is that they did not, I guess it's fundamental fairness. Okay. Someone in this kind of situation where we supplied a big medical record and when the agency issued its decision, they acknowledged they'd received the medical record and they acknowledged the request for more time and then they said, we cannot give more time. Yeah, but how much would have submitted? You also said if you come up with your counseling records, file a motion to reopen. Correct. And we did. And they said, we're not going to, and after Mr. Reynolds got out of the hospital, he went to New Hampshire where he had gotten the counseling over several years and had got a certificate, he could not find the agency. The big problem in these cases, if you go back to a conviction from 20 years ago, a lot of times there's no records, the counseling agency is gone, which it was in this case, so he made every effort, he did an affidavit saying exactly what he had done, what he had gone through with the counseling, and he got the certificate of completion. He could not find the agency in New Hampshire. It was long gone. He went to the building. Nobody knew where it was. But I think that. Can I ask you a question about your motion to reopen? Yes. You framed it as a motion to reopen and for, I'm trying to forget, it was for two things. And didn't the agency just deny it? You make a claim in your brief that we ought to, federal court ought to order them to rule on it. But I thought they did rule on it. Am I wrong? They treated the motion. They treated the two motions as one and denied them. Is that fair? Right. And, well, they treated the motion to reopen as a motion to. Reconsider. They said it was not enough. They told us in the original decision, if you get something more, submit it. So we did. Then we, with the motion to reopen, and they said, well, we're not going to consider this a motion to reopen. We'll consider it a motion to reconsider. And they denied it without considering the merits because they said, why didn't you submit this first? And yet they had the medical record. They knew he was incapable of doing anything. So it was kind of like. Was there some burden on your client to submit this information with the application rather than waiting for the intent to deny? No, Your Honor. I would say this was a new statute in 2006. It was passed right around the same time this I-130 was filed. I made several inquiries over the telephone to the agency. Why is this taking two years? Why has nothing happened? We had no indication that they were going to find non-eligibility. Well, but when the application was filed, the statute was in effect, was it not? Very recently, Judge, yes. And you didn't submit any information with that. No, the statute on its face is categorical. You're not eligible unless the secretary makes a finding. And so for the ensuing three years until you get that two years to get the notice of intent, you don't submit any information. When you get it, your client is in a position where, as you say, he may not be able to. To be honest, Judge, I had never had a case like this. I had done a lot of I-130s. But honestly, this was a new statute. And I honestly have to say I wasn't aware of the background until this happened. And then I did my best to deal with it when it came down. And I would also like to point out that I do have, in the U.S. District Court, the government attorney had suggested that we file a motion to reopen with the BIA to see if with further developments they might look at it again. We tried to do everything to not come to the federal courts. And we just got a decision a couple of months ago. They treated the motion to reopen as a motion to reconsider. They did grant the motion to reconsider. Then they dismissed again for lack of jurisdiction, citing the three 2014 BIA decisions. And I do have a copy of that, if the Court would like it. So they took the position that they couldn't review? Right. No, they just reiterated what they had said several years ago that you have in the record, again, that they don't. But again, in that decision, it was the two-to-one decision of the BIA. All three judges said – I'm sorry, not judges, but board members said we have a lot of trouble with this, poses no risk, and beyond reasonable doubt, standard. But again, we have a very limited jurisdiction. And so that's why I would ask this Court to take a look at it. And I'd like to point out that if you look at the denial by the U.S. CIS, they had a lot of facts in front of them. And they had this memo by Michael Eights of the CIS where he laid out all the key factors. And actually, at the time they denied, they knew Mr. Reynolds was in his 60s, his wife was in her 50s, both had been married before. There were no minor beneficiaries or derivative beneficiaries in this case. The New Hampshire State criminal incident had happened about 20 years before. There was no incarceration for that incident. There was no additional criminal record in the record after that. Do you want to save it for a button? Sure. Thank you, Your Honor. Okay, we'll hear from the government. Thank you. May it please the Court. Jeffrey Forney for Defendant Appellee, United States Secretary of Homeland Security. District Court correctly concluded that the agency's decisions in Adam Walshack cases are unreviewable under Section 1252A2B2 because the statute commits these cases to the agency's sole and unreviewable discretion. The statute, the Adam Walshack section, doesn't say including constitutional claims. And the Supreme Court's told us several times that if Congress doesn't expressly exclude constitutional claims, they remain. So why should we interpret the statute? I'm not sure what Mr. Reynolds' constitutional claims are, but let's assume that he had some. What constitutional claims would be preserved under the Supreme Court's decisions? None in this case. I didn't hear your answer. None in this case. Section 1252A2B2 is very clear. There's no review of any discretionary determinations. I knew it says that. What about the constitutional claims? What about a constitutional claim? None. Congress addressed that issue as well in the Real ID Act of 2005 when they amended the statute to include constitutional claims only for removal proceedings, and the statute was accordingly amended and codified in 1252A2D. Constitutional claims can only be heard by this court in petitions for review of removal orders. In no other cases. So you're familiar with our case law in this area? Right. Most recently in Veterans for Common Sense, 678 Fed 3rd at 1019, the court did say that it's a well-established principle that Article III courts are courts of limited jurisdiction. So the jurisdiction that they have is only that bestowed by Congress. In this case, Congress did not grant this court jurisdiction to hear constitutional claims in these types of cases. So if Mr. Reynolds' contention was that the Secretary granted these applications for all people of color, but never for white people, would we have jurisdiction to review that claim? Okay. Well, that's a different issue because that would be a potentially ultra-various action by the agency. There is a limited exception for those types of claims in Leadom v. Cain, which is 358 U.S. 184. That was a National Labor Relations Board case. It did not involve discrimination, but it did involve a case where the agency exercised authority in an area where Congress did not bestow authority on the agency. And even though the statute said there was... Well, but Congress did bestow authority to review the applications. He's making an argument a little bit different than the one I phrased, that although Congress gave the Secretary discretion to review the applications, she really doesn't do so. She just... When they come in, she puts them in the drawer and never looks at them because it would be a risk. After all, what if she was wrong? And just doesn't grant any of them. Why doesn't that claim survive? Well, first, the evidence in this case doesn't bear out that... Well, but that's a merits argument. Well, right. But if you look at the face of the decision itself, which I assume the Court's going to have to do at least that much to determine whether it is an Adam Walsh Act case, you see from the face of the decision that the agency did consider factors. Now, you can't reassess those factors. You can't judge how the agency weighed those factors or weighed the evidence in this case, but you do see that they did consider... Yeah. And my problem is not so much this case. I'm trying to figure out how we look at Adam Walsh Act cases in light of the Supreme Court's statement that constitutional claims survive a statute that itself doesn't say so. And your answer is you've got to cross-refer to the general jurisdiction stripping statute, not this one. And then I guess my question is why have a jurisdiction stripping provision in the Adam Walsh Act statute at all if it's really covered by the general statute? In other words, you're taking me up to what? Is it 12... 1252A2. 1252A2. Right. And so what you're really saying is that the provision in the Adam Walsh Act is superfluous. No, you have to cross-reference the provision because 1252A2b2 says any agency actions that are committed to agency discretion... To agency discretion. Right. That's right. But the end unreviewable portion of the Adam Walsh Act, in your view, is mere surplusage because it would have already been covered by 1252. A2b2. A2b2. I'm not as good at subsections as Judge Christie. But I think the question is a fair question. What is your answer? I'm not sure I understand the question. Well, let me try it again. If 1252A2b2 really renders unreviewable any discretionary decision, why did they need to say anything about that at all in the Adam Walsh Act? Is that your question? That's my question. You're correct. What she said. Language does overlap, but Congress does often write sections to be doubly sure. And that's what they did in this case. They wanted to be doubly sure that there's no judicial review of these types of determinations under the Adam Walsh Act. Isn't the answer is that they passed them at different times, and Adam Walsh Act was passed at a separate time. And at that time they may or may not have been aware whether or not there was a cost that was already covered by another provision, so they passed it. But then you want to go back and say, well, but when they go ahead and they amend the general provision to include some constitutional review, some constitutional claim, you want to read that back to the Adam Walsh Act, which is a little bit inconsistent with the idea that, well, they really weren't. It occurred after, didn't it? That wasn't the argument I was making. Yeah, it occurred. What we have here is 1252 amendment first and then Adam Walsh Act second, don't we? A 1252A2B2, some version of that was passed in 1996 and it was amended again in 2005. In 2005. Right. And the Adam Walsh Act gets enacted in 2006 or 2007. 2006. So that Congress sticks. The answer, Judge Kaczynski's first answer may be, or yours may be exactly right, which is that they, Congress just was doing belt and suspenders. But it was, it did do it after they passed a comprehensive act that said nothing is reviewable except certain claims, right? Right. So it was unnecessary, in your view. Prudent, perhaps, but unnecessary. It's sort of dancing on the head, but it's either unnecessary or it's surplus. Well, I mean, if a legislature's going to, you know, make sure that a court doesn't have jurisdiction when it's committing something to an agency discretion, I mean, in this case, it would take into account pre-existing provisions in the statute and it would want to use the language of discretion. It's duplicative, is it not? I'm sorry? According to your argument, it's duplicative. Put aside unnecessary. No, it's not duplicative, it's overlap. Okay. I mean, if you want to say. Well, is there anything in the. . . That's a scholastic argument, that's fine, but I mean. . . Is there anything in the Adam Walsh Act that's broader than 1252, do the subsections. Think of Van Dyke Apes. You remember those from high school, right? Yes, I do. This Adam Walsh Act would be entirely within, right? Right. There would be no overlap. It would be entirely included. It would not be subsumed entirely. And for this reason. Okay. You have to look at the Administrative Procedure Act because that's, of course, where a plaintiff would state a cause of action. So we have to overcome the presumption of judicial review. That can be done if there's a statute that precludes review, and we have that in 1252A2B2. Also, under Section 5 U.S.C. 702A2, if it's agency decision is committed to agency's discretion by law, there's also no review. Right. And that would be covered by the terms of the Adam Walsh Act. The first clause. In the secretary's sole discretion. In addition to the fact that there's no judicially manageable standards for the court to apply to a particular case. And look, I don't think this — this is not meant as a trap. I guess my question was meant to be a broader one, which is, is the Adam Walsh Act a broader jurisdiction stripping provision than 1252? Repeat the subsection. A2B2. It was passed after 1252A2B2, and Congress said, and unreviewable. And I wonder whether Congress was saying, those courts are very clever. They can always figure out a way to find some constitutional question in a case. We don't want this unreviewable at all. Don't even look at 1252A2B2. Just once you read this language, don't pass go, don't collect $200. Is that what Congress was saying? Well, certainly the Supreme Court has counseled that Congress draft statutes in light of how the judiciary has constructed an organic statute that an agency administers. So taking that into account as a background presumption for interpretation, I'm sure the court, the legislature knew about the Ninth Circuit's rather lenient view about allowing constitutional claims. We like to think of it as generous rather than lenient. And there is a constitution. And so what is your answer to that? About 10 minutes ago, I asked you, you're familiar with our circuit's case law. So what is your answer to that? We're a three-judge panel. We're not an en banc panel. Okay. Well, again, I think the case law on which the appellant relies are pre-Real ID Act cases. So that has to be taken into account. Congress spoke directly about constitutional claims in this area. And they limited it to petitions for review of removal orders. Well, and I guess the question I'm asking is, given our case law, pre-Real ID Act, could Congress have done a two-step here and said, first of all, in general, we don't want you looking at this stuff except in removal petitions. Now we get to the Adam Walsh Act where we're trying to protect children. We don't want your dirty hands on this at all, courts. Is that possible? Well, I think that's exactly what they did because you have to take, again, the background presumption that the courts have interpreted the INA in certain ways. And this court in particular, the Ninth Circuit, has allowed constitutional questions to be entertained. When Congress attempted to strip this court of jurisdiction, the court found it nevertheless. But they, again, to use your phrase, belt and suspenders to make sure that no claims would be heard under the Adam Walsh Act. So let's say the secretary decides, you know, we're not going to allow any petitions on behalf of any Chinese immigrant because we think Chinese are particularly vulnerable. And that's what she says. Reviewable? Not reviewable. Well, again, I think this is not our situation here. There's no evidence. No kidding. You think you're the first lawyer to have figured out that a hypothetical is not our situation here. But I will answer your question nevertheless after having made clear that we're not talking about discrimination in this case. But I do think, as I mentioned before, the leading… Let me ask you this. You think I think we're talking about discrimination in this case? I have no idea. I don't know. You don't know. I presume you're asking a hypothetical question. You're testing the proposition I'm putting forward and that there might be a suspicion that there is discrimination in this case. It's a hypothetical question. But there is none. There's certainly no evidence of that here by the… It's a question, not an accusation. Try to answer the question. It's just a question. Really, it's just a question. I didn't take it as an accusation. I'm just saying. It sounded like you did. Okay, my mistake. I'm sorry. I think, as I said before, lead them… You know, this is on tape. You might go back and play this segment over when you get back to your office and ask yourself, how could I have handled this better? But now handle it better. Go ahead. Answer the question for her. Do you remember the question? I don't. What if the Secretary had a policy of not granting these for Chinese immigrants? Would that be reviewable? I think that would be reviewable, yes. Under what circumstances? I just said it so much better than I did. No, actually, I just said it later than you did. Why would it be reviewable? Why would it be reviewable? I think because the Secretary would take upon himself to engage in an action that is ultra-various. Tell me again what statute you're citing for the proposition that ultra-various… It's Leiden v. Kane, 358 U.S. 184. Yeah, but what statute? We're a court of statutory jurisdiction. It is a non-statutory claim challenging an ultra-various action that has been recognized as a narrow exception by the Supreme Court. And I think that that may fall within the hypothetical that Judge Kaczynski presented and that I misconstrued as an allegation. I'm sorry. Now that we've established that, I think what your opponent is saying is that there's an ultra-various claim here because the statute should never be applied to 60-year-old men who are sponsoring the application of their long-time 50-something-year-old spouses. I've got the ages in the approximate area. Maybe a silly claim, but if ultra-various is preserved in some way, why isn't that ultra-various? The statute was not meant to cover these people. Yeah, because I think an ultra-various claim is more narrow than the agency has misconstrued the statute. An ultra-various claim is if the agency is exercising authority in an area where they were not permitted. For example, if they're applying the item law checks… How is saying, look, we've looked at it. I have a lot of experience. I'm the secretary. I have experience. I just find Chinese are more vulnerable. You know, we've seen a lot of Chinese people, and they just tend to be sort of more vulnerable to this kind of thing. How is that ultra-various? Or virus, depending on which… Yeah, I don't know. Yeah, but it's probably various. No Romans in the courtroom, so we can't tell. Romanians? They could go on forever. You're going to not hear them. Romanians, you're right. Port your head. Okay. So how is that ultra-various? He says, I have nothing against Chinese. In fact, we're here to protect them. And I find them vulnerable, so we're not going to allow it. Why is it ultra-various? Well, the statute itself sets up per country limitations, but it's not based on discrimination. See, I would have thought you were… We're going to let just as many Chinese in. What we're not going to do is let them in on behalf of a petitioner who has committed a certain kind of crime. That excludes a certain group of people, but it does not in any way limit the number of people from that country that actually come in. It just shifts slightly the composition of… I suppose if an ethnic-based assessment was done on sociological terms under the no-risk assessment by the statute, I think Your Honor may be correct that then that assessment would not be subject to review because it's a discretionary assessment. See, you're resisting, but I'm not sure that this isn't like clemency, that somebody has said, these people are all subject to the statute. Secretary, if you find one that doesn't scare you at all, you can let them off. But we're never going to look at how you reach that decision, even if you reach it by applying unconstitutional factors. The courts are not going to be allowed to. The President can grant pardons only to white people. I mean, he can, and it's not reviewable. Why isn't this just an unreviewable executive decision? Well, that is the government's position. I mean, the entire Adam Walsh Act assessment is committed to agency discretion without qualification. And even if the Secretary applies unconstitutional criteria? You could say yes. I think that may be a sustainable position. I just want to know. Yes, in the sense because constitutional claims cannot be entertained by the court in this arena. So it would be a determination the court could never make. And even if the Secretary acts in an ultra-various fashion? Or a blatantly discriminatory fashion. Perhaps, that an ultra-various claim may be preserved. So is it within Congress's power to do that? Can Congress say to the courts, you just can't review this no matter how bad the decision is? Yes, it's certainly within the legislature's power to define the jurisdiction of Article III courts. I mean, Henry Hart might not agree with you, I take it. But we're not dealing with one of those questions here. But it strikes me this is the kind of decision that Congress might well say. As opposed to the one under 1226 where the Secretary decides to detain somebody. And there we have constitutional values at stake. And we say we're not going to read out that the Secretary gets to imprison people without the court reviewing it. But here it's a clemency sort of decision. And I'm not sure why Congress isn't entitled to say. I certainly agree with Your Honor. It's committed to agency's discretion without qualification. But you were the one who was limiting the qualifications. That's what I'm trying to figure out. I just know that under Supreme Court case law that they have carved out a very narrow section for ultra-various actions. But that's not this case. So there may be a limiting exception. But, of course, it's not applicable here. In any event, if the court still found under controlling Ninth Circuit case law that there was a constitutional claim to be entertained. Like, for example, under Hassan v. Chertoff, which was cited in the briefs. The court has only carved out a narrow exception for constitutional claims that are colorable. And I don't think that the appellant has made a colorable constitutional claim here. This case certainly isn't about a right to marry. They're married. The Adam Walsh Act nor the agency's decision has anything to do with the appellant's right to marry. He can marry whomever he pleases. This statute is about the admission of foreign nationals in the United States over which Congress has plenary power. And as far as any fundamental due process claims that... To be entirely fair, the claim is that in order for them to live as a married couple, he has to give up his U.S. residence. I mean, they're not allowed, she's not allowed to come in and live with him here. So he has to make a choice between his rights to be a U.S. citizen, to be president of the United States, and enjoy the benefits of citizenship versus the right to have a married life in the normal sense. I mean, the fact that they're theoretically married is not quite the same, right? That's the choice. I mean, it may not be a winning argument, but it strikes me as more of a material argument. But the statute on space has nothing to do with affecting anyone's right to... No, no, we're talking about constitution. You said we're now in that area. You said assuming there is a constitutional claim left, it is not colorable. And I just didn't think the way you described it was entirely fair as to what the constitutional argument is. The argument poses a tension between the right of a U.S. citizen to live on U.S. soil and enjoy the benefits of U.S. citizenship and the right to enjoy family life with somebody to whom he's married. And that is a tension. I mean, it may not be a winning argument, but it doesn't strike me as a wholly implausible argument. Well, it's analogous to decisions that even this court has recognized that in the removal and deportation context, if someone needs to leave the United States because they want to remain with their spouse, that that's not a constitutional moment that Congress can regulate in that area. It doesn't affect the right to marriage. It might have a collateral effect on choices you make about where you live or whom you spend time with. Are those constitutional cases? I believe so. I don't have them read in your hand, but I know this court has found that in cases where, in petitions for review of removal orders where aliens have been deported because they haven't been able to show extreme and exceptional hardship under cancellation, for example, because they have a U.S. citizen spouse, that Congress can regulate in that area and not be a constitutional moment. Okay, thank you. Thank you. You have a minute left. Thank you. Your Honors, I was looking at a recent decision of this court. It's called Doe v. Harris, decided November 18th, 2014. This case dealt with the California sex offender registry statute, and it involved First Amendment issues. And I just wanted to just give a one-sentence quote. This court said, although California clearly has a legitimate interest, the more difficult question is whether the means California has chosen burdens substantially more speech than is necessary to further the government's legitimate interests. So what constitutional value is burdened by the section of the Adam Walsh Act that you're concerned about? Your Honor, I think where you get into the poses no risk, it's how broadly do you interpret poses no risk? Because if you say poses no risk, if there's no possibility of risk, possibilities are endless. Congress has passed a provision with no exception. Could Congress have said, left out the thing unless the secretary determines there's no risk? Could Congress have passed the Adam Walsh Act with no escape clause whatsoever? I think no, Your Honor. Why not? I think that. What constitutional provision would prevent Congress from doing so? Well, Judge, the Fifth Amendment. This court in the case of Ching v. Mayorkas has said that Fifth Amendment due process is implicated in an I-130 petition because you do have a U.S. citizen involved who is petitioning for a foreign spouse. And so I think the due process is implicated. I quoted this court's case in Doe v. Harris just to say I think that whether it's the state of California or it's the U.S. Congress, as much as anyone, who doesn't want to protect children? I mean, who doesn't want to? And it's clear that that was the intent of this congressional statute. I think when California passed its sex offender registration statute, obviously it's a matter of protection, but it's a question of how far can you go. And I honestly think that your question is what if they made no exception. I think, in fact, they have made no exception because I think it's impossible, nearly impossible, to get by this poses no risk. Because how can you say no risk? What is risk? I don't know. I think there has to be something limited. And I would point out in the case of INS v. St. Cyr, which we cited in our brief, the Supreme Court did talk about statutory interpretation to avoid constitutional questions. And the Supreme Court said if an otherwise acceptable construction of a statute, which the government is arguing this is an acceptable construction, would raise serious constitutional problems and where an alternative interpretation of the statute is fairly possible, we are obligated to construe the statute to avoid such problems. And the court very briefly went on to say a construction of the amendments at issue that would entirely preclude review of pure questions of law by any court would give rise to substantial constitutional questions. So I do think under INS v. St. Cyr this court does have jurisdiction to look at questions of statutory construction, to look at constitutional issues. Okay. Okay. I appreciate it, Your Honor. Thank you. I'm looking forward to going back to the snow. Thank you very much. Thank you.
judges: Kozinski, Christen, Hurwitz